IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHNNY RAY BARNES                                                       PLAINTIFF

                v.                       Civil No. 09-2016

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                         DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Johnny Barnes, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI) under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**      **Procedural Background**

The plaintiff filed his applications for DIB and SSI on January 23, 2007, alleging an onset date of June 19, 2006, due to head, neck, back, left leg, and shoulder pain, moodiness, and problems with memory and concentration. (Tr. 124, 133, 147, 161-162). His applications were initially denied and that denial was upheld upon reconsideration. (Tr. 56-65, 67-70). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). An administrative hearing was held on August 4, 2008. (Tr. 23-43). Plaintiff was present and represented by counsel.

At this time, plaintiff was 33 years of age and possessed a high school education and certification as a carpenter. (Tr. 29). He had past relevant work experience as a school custodian. (Tr. 32).

On October 15, 2008, the ALJ found that plaintiff's disorder of the back and headaches were severe impairments, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 53). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to lift or carry less than ten pounds frequently and ten pounds occasionally; to sit for a total of six hours and stand or walk for two hours in an eight-hour workday; to occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds; to frequently balance and climb ramps and stairs; to occasionally reach overhead; and to perform only unskilled, simple one-to-two step tasks. (Tr. 53-54). With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a small production machine operator, small product assembler, and food order clerk. (Tr. 58).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on February 10, 2009. (Tr. 1-4). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Docs.7, 8).

## II.  **Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

2

would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

AO72A
(Rev. 8/82)

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion

After reviewing the medical evidence of record, the undersigned finds that the ALJ's RFC is not supported by substantial evidence. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

4

Records indicate that plaintiff had a history of lumbar disk disease and had undergone at least three prior surgeries. (Tr. 189, 193-202). On June 19, 2006, plaintiff was working as a custodian when he slipped on a wet floor and fell backwards, landing on his back. (Tr. 189-190). He reported neck, thoracic back, and lower back pain. Plaintiff described sharp pain over his entire back, which he rated as an eight or nine on a ten point scale. He denied radicular symptoms, but had a little bit of an occipital headache. Plaintiff indicated that his pain was exacerbated with certain movements and relieved with rest. His current medications were a muscle relaxant and Darvocet. Dr. Terry Clark examined plaintiff and noted that his neck was supple with tenderness over the lower third of the cervical spine; there was tenderness to palpation in the upper thoracic spine as well as bilateral paralumbar tenderness; a full range of motion was noted in all extremities; and, he exhibited a full range of motion in the back on flexion, extension, and lateral flexion with discomfort. Dr. Clark indicated that x-rays were negative for acute bony injury. He then diagnosed plaintiff with a fall with cervical, thoracic, and lumbar strain. Dr. Clark prescribed Celebrex and restricted him to lifting no more than twenty pounds; alternating sitting and standing; and, limited bending, stooping, and twisting. (Tr. 189-190).

This same date, x-rays of plaintiff's cervical spine revealed no bony cervical spine injury. (Tr. 187). However, there was degenerative disk disease and marginal spondylosis at multiple levels, mainly the C5-6 and C6-7 levels. An x-ray of his thoracic spine was within normal limits. (Tr. 187).

On July 3, 2006, physical therapy notes indicate that plaintiff continued to complain of pain in the cervical and thoracic regions aggravated with any motion and radiculopathy down the

5

right arm. (Tr. 188). Plaintiff experienced significant pain to even slight pressure in the cervical spine (C5-7). Further, his alignment and posture were guarded with tightness noted in the cervical spine and he had limited trunk flexibility on all planes. The physical therapist recommended continued physical therapy for muscle range of motion and pain management. (Tr. 188).

On July 6, 2006, plaintiff underwent a back evaluation for Cooper Clinic Physical Therapy. (Tr. 192). Plaintiff reported persistent lower back pain and numbness of the left great toe. His movement was better, but he reported little relief with the TENS unit. He exhibited limited trunk flexibility, moderate palpable discomfort, and decreased left ankle dorsiflexion and left great toe extension. (Tr. 192).

On July 7, 2006, an MRI of plaintiff's cervical spine revealed multilevel significant disk abnormalities. (Tr. 104, 191). The most significant finding was at the C5-6 level, where there was a moderately large broad-based disk herniation, most prominent on the left posterolaterally, producing moderate canal stenosis. There was also bilateral foraminal spurring at this level. A mild-to-moderate central disk bulging was noted at the C4-5 level along with a moderate broad posterior bulging of the disk at the C3-4 level producing mild canal stenosis with the disk bulge protrusion mildly eccentric to the left of the midline. (Tr. 104).

On July 28, 2006, physical therapy notes indicated that plaintiff's posture and alignment were guarded with tightness in the cervical and thoracic regions. (Tr. 183). He reported radicular symptoms down his arms and legs. Tenderness to palpation was also noted in the trapezius, mid-trapezius, and cervical regions. (Tr. 183).

6

This same date, plaintiff reported that his lower back pain was improving. (Tr. 185-186). He had been off work for three weeks. Plaintiff rated his pain as a one to a two on a ten point scale and indicated that he was doing his home exercises. He did report some numbness to the ball of his foot and large great toe. However, no weakness of the leg was noted. Plaintiff had good gait throughout the room both toe and heel. He was able to stand and flex at the waist at forty to fifty degrees and extended five to ten degrees. His left and right hip shifts were ten to fifteen degrees each. No spasms were detected, and his straight left raise was to ninety degrees bilaterally without report of pain in the sitting position. Deep tendon reflexes were graded absent in the patellar and were symmetrical. His light touch sensation was intact in his feet as was his plantar response on the right. There was no plantar response on the left. Plaintiff voiced his readiness to return to his regular duties of mopping, sweeping, and waxing the floors at Van Buren Schools. Dr. Holder diagnosed him with lumbar strain and status post lumbar bilateral screw with fusion and an L4-5 disk herniation. He prescribed continued exercises and released plaintiff to return to work without restrictions. (Tr. 185-186).

On August 1, 2006, an electromyogram was performed for the evaluation of numbness and pain in plaintiff's left arm and leg. (Tr. 180-182). The study was abnormal. There was evidence of mild carpal tunnel syndrome on the left side manifested by prolongation of the medial palmar sensory peak latency compared to the ulnar palmar sensory peak latency. A difference of greater than 0.50 milliseconds was significant. Plaintiff was approximately one millisecond prolonged. It was also abnormal because of some changes in the tensor fascia lata on the left suggesting the presence of an L5 radiculopathy. (Tr. 180-182).

AO72A
(Rev. 8/82)

On August 4, 2006, plaintiff was referred to Dr. Michael Standefer for evaluation of his neck and back pain, headaches, ringing in his ears, numbness in his left arm, lower back pain, pain in the hips and legs, and pain between the shoulder blades. (Tr. 226-227, 297-299). Plaintiff indicated that he had fallen on a wet floor in June, while working as a custodian. Dr. Standefer noted plaintiff's history of lumbar disk fusion surgery and pedicle screw fixation at the L5-S1 level. Plaintiff's primary complaint was of persistent neck pain, pain in the left shoulder region, and pain as well as numbness and tingling in the left upper extremity. This was quite bothersome for plaintiff on a day to day basis. An examination revealed a satisfactory range of motion in the neck, a normal gait, and a limited range of motion in the lumbar spine. An EMG had also demonstrated mild carpal tunnel syndrome. Changes in the tensor fascia lata on the left side were noted, suggesting the presence of an L5 radiculopathy. Dr. Standefer noted that plaintiff had undergone physical therapy for his cervical region, but had not had any traction. Dr. Standefer recommended updated lumbar x-rays, an MRI, continued physical therapy, and traction. He asked plaintiff to follow-up in two weeks. If no improvement was evident at that time, Dr. Standefer stated that he would recommend surgery. (Tr. 226-227).

On August 10, 2006, plaintiff complained of pain in the cervical region radiating down to the middle of his back. (Tr. 179). Pete Cepeda, a physical therapist at Cooper Clinic, noted that plaintiff was unable to tolerate any gradual increase in poundage of pull with traction secondary to feeling nauseated. He recommended continual daily treatment to decrease the pain in the cervical region and to increase tolerance to activity. (Tr. 179).

On August 15, 2006, an MRI of plaintiff's lumbar spine showed posterior fusion at the L4-5 level without significant central or foraminal stenosis or current disk herniations. (Tr. 294-

8

295). There was some mild enhancement along the lateral recess, which likely related to some mild granulation tissue. Diffuse disk bulging was present along the hypertrophic changes of the facets of the ligamentum flavum at the L3-4 level causing central canal stenosis. Prominent hypertrophic degenerative change of the facets at the L5-S1 level was also causing some narrowing of the central canal. Further, there was a minimal disk bulge at the L5-S1 level. (Tr. 294-295). X-rays of his lumbar spine also revealed status post posterior fusion at the L4-5 level and mild degenerative disk disease at the L5-S1 level. (Tr. 296).

On August 29, 2006, Dr. Standefer noted no changes between plaintiff's current lumbar spine MRI and a pervious scan. (Tr. 225, 293). There was no evidence of any significant progression of adjacent levels of change and no evidence of overt disk protrusion or screw breakage. As such, the mainstay of plaintiff's therapy for his lower back would consist of supportive therapy utilizing anti-inflammatory medication and physical therapy. Dr. Standefer noted that plaintiff had undergone physical therapy for his neck as well, but this had not provided him with any significant improvement. Therefore, Dr. Standefer recommended an anterior cervical diskectomy and fusion utilizing allograft and anterior cervical plate and screw fixation mechanism spanning the C5-6 level. (Tr. 225).

On September 14, 2006, plaintiff underwent an anterior cervical discectomy with fusion at the C5-6 level. (Tr. 219-222, 285-287). A post surgical x-ray of plaintiff's cervical spine revealed satisfactory alignment. (Tr. 203, 284). He was status post anterior fusion at the level of C5-6 with hardware and graft in the disk space. (Tr. 203).

On October 9, 2006, x-rays of plaintiff's cervical spine revealed no surgical complications. (Tr. 234). However, there was some mild associated degenerative disk disease at the C6-7 level. (Tr. 234, 282).

On October 18, 2006, plaintiff was experiencing focal neck and bilateral trapezius pain. (Tr. 224, 292). He noted increasing pain whenever he turned his neck. Prior to surgery, plaintiff had some left upper extremity pain that now seemed to be accentuated. An examination revealed marked tenderness to even superficial palpation. Overall, the bulk of his aches and pains appeared to be consistent with a myofascial pain source. As such, Dr. Standefer recommended plaintiff undergo physical therapy. He also prescribed Lorcet, Robaxin, and Celebrex. Due to difficulty swallowing, Dr. Standefer also ordered a barium swallow, which proved to be normal. (Tr. 224, 232).

X-rays of plaintiff's cervical spine taken on November 15, 2006, showed anterior fusion at the C5-6 level with a bone plug in the anterior half of the intravertebral space and anterior degenerative spurring at the C6-7 level. (Tr. 231, 279).

On November 16, 2006, plaintiff was doing better, although he did have residual neck pain. (Tr. 223, 291, 301). Physical therapy seemed to have been of assistance to him. Dr. Standefer indicated that it was worthwhile to note that there was an extrinsic defect along the posterior aspect of the esophagus at the level of the aortic arch. This was thought to be perhaps an aberrant right subclavian artery that did not produce any significant compression. Dr. Standefer advised plaintiff to continue to increase his activity level in accordance with how he felt, but to use caution with lifting and bending. Plaintiff was to remain off work and continue

10

physical therapy for the next two months. Dr. Standefer asked plaintiff to return in January, at which time he hoped to return plaintiff to work. (Tr. 223).

On December 5, 2006, an x-ray of plaintiff's cervical spine revealed post surgical findings at the C5-6 level and degenerative changes at the C6-7 level. (Tr. 229, 277). There was also narrowing at the C6-7 level with anterior spurring. (Tr. 229). This same date, an MRI of his cervical spine revealed a broad-based spur and disk bulge at the C3-4 level, central spur and bulge at the C4-5 level, and right paracentral small focal protrusion of the disk at the C7-T1 level. (Tr. 230, 275).

On January 11, 2007, plaintiff underwent a functional capacity evaluation ("FCE") with Pattie Watkins, a physical therapist. (Tr. 171-173). Ms. Watkins concluded that plaintiff could return to light physical demand level work. However, with respect to rehabilitation, she stated that he presented as a potentially difficult candidate due to his lack of full physical effort and significant degree of symptom magnification. (Tr. 171-173).

On January 23, 2007, plaintiff followed-up with Dr. Standefer. (Tr. 300). Notes indicate that his most recent x-rays had shown acceptable alignment of the cervical spine with secure hardware. Fusion appeared to be underway. Dr. Standefer had also reviewed plaintiff's FCE. Plaintiff continued to report chronic neck pain and a limited range of motion about his neck. He also reported some residual right upper extremity pain that was bothersome for him. Overall, Dr. Standefer did not believe plaintiff had derived a great deal of benefit from his cervical disk surgery. Due to the level of residual pain, he was skeptical that plaintiff would be able to resume his employment. He stated that the best plaintiff could hope for would be a light duty occupation. Dr. Standefer stated that even with light work, plaintiff would need to avoid heavy

11

lifting, repeated bending, avoid prolonged flexion or extension of the neck, and must alternate sitting, standing, and walking. Believing that no such positions were likely to exist, Dr. Standefer recommended that plaintiff pursue disability. He also advised plaintiff to pursue a walking and exercise program, continue to employ judicious use of analgesic medications, and to look into something like a vocational technical school or resumption of higher education to take him out of the manual labor market. (Tr. 300)

On April 11, 2007, Dr. Hamilton prescribed Topamax, Percocet, Flexeril, and Celebrex. (Tr. 263). Records indicate plaintiff continued to have complaints of headaches and cervical radiculopathy. (Tr. 263).

An MRI of plaintiff's lumbar spine taken on April 17, 2007, revealed early degenerative and post surgical changes of the lumbar spine. (Tr. 264-265, 335-336). There were no focal disk herniations. There was posterior fusion of the L4-5 with early degenerative changes to the lower lumbar spine and desiccation of the disk at the L3-4 level with mild posterior osteophyte formation. Early degenerative changes were also noted at the L2-3 level with hypertrophy of the ligamentum flavum and bilateral facet joints and mild spinal canal stenosis. The L3-4 level also showed mild early degenerative changes with a mild diffuse disk bulge with asymmetry to the left. There was also hypertrophy of the ligamentum flavum and bilateral facet joints with associated mild spinal canal stenosis. The L4-5 an L5-S1 levels showed some minimal enhancing granulation tissue, but nothing really remarkable. (Tr. 264-265).

This same date, an MRI of plaintiff's cervical spine showed degenerative changes at the C3-4, C4-5, and C6-7. (Tr. 266-267, 337-338). There was small posterior osteophyte formation, associated diffuse disk bulge, hypertrophy of the bilateral uncinate processes, mild spinal canal

12

stenosis, and mild stenosis of the left neural foramina at the C 3-4 level. Mild diffuse disk bulging was also present at the C4-5 level. There was a left paracentral posterior osteophyte with associated disk bulge, effacement up on the anterior left lateral aspect of the thecal sac, and mild stenosis of the left neural foramina at the C5-6 level. Further, a small posterior osteophyte formation associated with a diffuse disk bulge was noted at the C6-7 level, while small central protrusion was noted at the C7-T1 level. (Tr. 266-267).

On May 23, 2007, plaintiff complained of a headache and cervical radiculopathy. (Tr. 260, 311-313). Dr. Hamilton prescribed Lyrica. (Tr. 260, 311-313).

On June 11, 2007, Dr. Hamilton wrote a letter indicating that plaintiff suffered from cervical and lumbar radiculopathy. (Tr. 258, 274). Since his fall in 2006, Dr. Hamilton stated that plaintiff had suffered from constant pain and numbness in his back, neck, shoulders, arms, and legs. He also suffered from headaches. Dr. Hamilton indicated that plaintiff had tried different pain medications and muscle relaxers but nothing seemed to ease his pain. As such, he recommended that plaintiff seek treatment at the Tulsa Pain Center as he felt plaintiff would benefit greatly from pain injections. Unfortunately, his insurance would not cover this facility. Dr. Hamilton opined that he did not see plaintiff returning to work at anytime in the near future. He believed plaintiff would always have limitations and restrictions to any job. He then indicated that any and all treatments should be deferred to plaintiff's workers compensation carrier. (Tr. 258).

On August 22, 2007, Dr. Hamilton completed a medical source statement of ability to do work-related activities. (Tr. 271-273). He indicated that plaintiff could lift less than ten pounds occasionally, stand and walk less than two hours in an eight-hour workday, and sit less

13

than six hours during an eight-hour workday. Dr. Hamilton stated that these limitations were due to plaintiff's cervical and lumbar radiculopathy resulting in severe neck and back pain. He also noted that plaintiff could occasionally kneel, but never climb, balance, crouch, or crawl. Dr. Hamilton found plaintiff to be limited with regard to reaching in all directions; handling; fingering; and, working in temperature extremes, near vibrations, in humidity/wetness, near hazards, and near fumes, odors, chemicals, and gasses. (Tr. 271-273).

On October 15, 2007, plaintiff complained of insomnia and pain from his lumbar radiculopathy. (Tr. 306-310). An examination was normal and he was neurologically intact. Dr. Hamilton prescribed Gabapentin and Lortab to treat his pain. He was also experiencing some pain with urination and pain with his bowel movements. As such, Dr. Hamilton diagnosed him with prostatitis and prescribed Cipro and Flomax. (Tr. 306-310).

On November 29, 2007, plaintiff continued to voice complaints of back and neck pain, headaches, poor sleep, fatigue, dizziness, loss of coordination, and ringing in the ears. (Tr. 301-302). The Gabapentin kept him awake and the Lortab was not helping. Therefore, Dr. Hamilton prescribed Percocet and Zanaflex. He also noted that plaintiff was post treatment for prostatitis and was currently taking Flomax. Further, because plaintiff was not taking an ACE inhibitor or a beta-blocker, Dr. Hamilton prescribed Lisinopril and Coreg. At plaintiff's next visit, Dr. Hamilton indicated that he would start plaintiff on Zocor. (Tr. 301-302).

In spite of the assessments of Drs. Hamilton and Standefer, the ALJ concluded that plaintiff retained the residual functional capacity to lift or carry less than ten pounds frequently and ten pounds occasionally; to sit for a total of six hours and stand or walk for two hours in an eight-hour workday; to occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or

14

scaffolds; to frequently balance and climb ramps and stairs; to occasionally reach overhead; and to perform only unskilled, simple one-to-two step tasks. Dr. Standefer opined that plaintiff could perform light work, but must avoid heavy lifting, repeated bending, prolonged flexion or extension of the neck, and must alternate sitting, standing, and walking. Dr. Hamilton found plaintiff capable of performing only sedentary work involving only occasional kneeling and no climbing, balancing, crouching, or crawling. He also found plaintiff to be limited with regard to reaching in all directions; handling; fingering; and, working in temperature extremes, near vibrations, in humidity/wetness, near hazards and near fumes, odors, chemicals, and gasses.

Given plaintiff's history of repeated back and neck surgeries and the evidence indicating that plaintiff continued to experience pain and radiculopathy, it is clear to the undersigned that someone with plaintiff's impairments would experience difficulty performing any reaching activities or activities requiring prolonged sitting or flexion of the neck. Climbing would also be difficult due to his previous injuries. Because the ALJ failed to take these limitations into consideration, this case must be remanded to the ALJ for further consideration of plaintiff's RFC.

We also note that the ALJ tried to dismiss Dr. Standefer's recommendation that plaintiff seek disability, stating that it was not clear that Dr. Standefer understood what the term disability meant. A thorough review of Dr. Standefer's records shows that the doctor was cognizant of the meaning of disability. He stated that plaintiff could not return to his past work and that with the limitations he had assessed the plaintiff, he did not feel it likely that he would be able to find a job that he could perform. As such, the ALJ's dismissal of Dr. Standefer's opinion was improper. On remand, the ALJ is reminded that the opinion of a specialist is generally entitled

15

to more weight than that of a general doctor when the medical issue is related to the specialist's area of specialty. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). The ALJ should take note that Dr. Standefer is a neurosurgeon.

## IV. Conclusion

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 25th day of February 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)